UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, a Charter City and municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>MANCHESTER PACIFIC GATEWAY, LLC; MANCHESTER FINANCIAL GROUP; AMG DEMOLITION & ENVIRONMENTAL SERVICE, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:24-cv-01007-JAH-VET<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF No. 10]** |

Pending before the Court is Plaintiff City of San Diego's motion to remand. Defendants Manchester Pacific Gateway, LLC and Manchester Financial Group (collectively "MPG") oppose the motion. After a thorough review of the parties' submissions and for the reasons discussed below, the Court GRANTS Plaintiff's motion.

## BACKGROUND

Plaintiff originally filed a complaint asserting claims for breach of written contract, breach of oral contract, indemnity/contribution and declaratory relief on February 22, 2024, in Superior Court. *See* Complaint (ECF No. 1-2). Plaintiff alleges MPG, the developer/lessee of the Manchester Pacific Gateway-Navy Broadway Complex

redevelopment project ("Broadway Complex Project"), agreed to develop the site to include the United States Navy's Regional headquarters and private development pursuant to a 99-year lease agreement with the Navy. *Id*. ¶¶ 5, 11.  According to Plaintiff's allegations, MPG's subcontractors and/or agents attempted to dispose of soil waste generated by the project characterized as "clean native soil" at the Miramar landfill. *Id*. ¶ 12.  After months of negotiations, Plaintiff alleges, it agreed to allow MPG to deposit clean native soil or "Waiver-10 soil" at the Chollas landfill. *Id*. ¶ 14.  Plaintiff further alleges Defendant AMG Demolition & Environmental Service, Inc. ("AMG") executed a Right of Entry permit ("ROE") with Plaintiff for the delivery of clean native soil to the Chollas landfill and Defendants imported the soil between October 2018 and January 2019. *Id*. ¶¶ 17, 18.  Plaintiff further alleges the soil imported by Defendants did not qualify as native clean or Waiver-10 soil which resulted in reports of violations and cease-and-desist orders by regulatory agencies, including the Regional Board. *Id*. ¶¶ 18-21.  Plaintiff also alleges Defendants failed to remedy the violations and/or provide a corrective action plan ("CAP") as required by the Regional Board which forced Plaintiff to complete its own CAP. *Id*. ¶¶ 20-26.  After the Regional Board approved Plaintiff's CAP, Plaintiff alleges, it implemented the CAP at its sole expense. *Id*. ¶¶ 27-30.

On June 7, 2024, MPG Defendants removed the action to federal court pursuant to 28 U.S.C. sections 1441(a) and 1442(a)(1).  *See* Notice of Removal (ECF No. 1).  Thereafter, MPG Defendants filed a motion to dismiss and a motion to strike.  *See* ECF Nos. 6, 7.  Plaintiff opposed the motions and filed the instant motion to remand on July 17, 2024.  *See* ECF No. 10.  MPG Defendants filed a response in opposition and Plaintiff filed a reply in support of the motion.  *See* ECF Nos. 17, 20.  On August 16, 2024, Defendants filed a motion to strike the declaration of Ian Williamson which was filed in support of Plaintiff's reply.  *See* ECF Nos. 20-1, 22.  The Court took the motion to remand under submission upon determining it was appropriate for disposition on the parties' briefs.  *See* ECF No. 21.  Thereafter, the Court denied Defendants' motion to strike the declaration but

provided Defendants an opportunity to file a sur-reply. On March 7, 2025, Defendant filed a sur-reply.

## LEGAL STANDARD

The federal court is one of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998). Removal jurisdiction is governed by 28 U.S.C. section 1441. A state court action can be removed if it could have originally been brought in federal court. 28 U.S.C. § 1441(a); *Caterpillar, Inc v. Williams*, 482 U.S. 386, 392 (1987).

A plaintiff's motion to remand which challenges removal jurisdiction is "the functional equivalent of a defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). As such, the challenge may be either a facial attack that challenges the defendant's grounds for removal as insufficient on their face or a factual attack that contests the truth of the defendant's grounds for removal through the use of evidence outside the pleadings. *Id*. at 1221-22. The Court may resolve any factual disputes arising from a factual attack. *Id*.

District courts must construe the removal statutes strictly against removal and resolve any uncertainty as to removability in favor of remanding the case to state court. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). The burden is on the removing party to demonstrate federal subject matter jurisdiction over the case. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

## DISCUSSION

MPG Defendants removed this action pursuant to 28 U.S.C. section 1441(a), asserting the claims and allegations at issue arise out of conduct occurring on a federal enclave and section 1442(a)(1), asserting Defendants were acting under the direction of federal officers. Plaintiff argues none of the conduct giving rise to this action occurred at the Broadway Complex Project but, instead, maintain its injuries resulted from the ROE permit issued to Defendants and Defendants placement of soil that did not qualify as clean

soil at the Chollas landfill and the reduced capacity at the Miramar landfill site where Plaintiff relocated the soil.

## I. Federal Enclave

A federal court has subject matter jurisdiction over a claim based on federal enclave jurisdiction if the locus from which the claim arose is a federal enclave. *See Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975). As such, the injury or the conduct giving rise to the injury must occur on the federal enclave. *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022). An attenuated or remote connection between the injury and conduct on the federal enclave will not support jurisdiction. *Id.*

Plaintiff contends the lawsuit arises out of the breach of the agreement to allow Defendants to bring clean native soil or Waiver-10 soil to the Chollas landfill and maintains MPG Defendants obtained a waiver permit and Defendant AMG executed a ROE permit allowing them to dispose of soil at the closed Chollas landfill in furtherance of the agreement. Plaintiff asserts where the soil originated is immaterial. Plaintiff argues the breach of the oral agreement and the breach of the ROE permit occurred because MPG Defendants brought non-qualifying soil to the Chollas landfill, not because it got the soil from the Broadway Complex Project site. As such, Plaintiff argues the locus giving rise to this action is not on the federal enclave.

Even if the locus can be construed as the Broadway Complex Project site, Plaintiff contends, the site is no longer a federal enclave because the 99-year lease between the Navy and MPG Defendants grants MPG the right to private development of the site and leaves the Navy with only limited rights as to the site for the lease term.

Defendants argue the Navy Broadway Complex Project and Miramar landfill are federal enclaves and the locus of the alleged injury occurred on those sites. Specifically, Defendants argue Plaintiff's direction to Defendants to dispose the waste generated from the project site at the Chollas landfill caused any alleged injury.

In support of its breach of written contract claim, Plaintiff alleges it issued a ROE to Defendant AMG allowing Defendants to deposit clean native soil or Waiver-10 soil from

the project site at the Chollas landfill. Complaint ¶ 36. Plaintiff further alleges the ROE required AMG to comply with all applicable law and regulations at its expense, prohibited AMG from allowing illegal installation or storage of any regulated substances and made AMG responsible for the repair of any damage it caused or costs of removal of unauthorized work and provided that AMG would indemnify Plaintiff for any claims or expenses arising out of environmental liabilities resulting from AMG's disposal of soil. *Id*. ¶ 38-43. Plaintiff further alleges Defendant AMG imported soil that did not meet the requirements for Waiver-10 or clean native soil resulting in Plaintiff's need to develop and implement a CAP at its own expense and, when Plaintiff sent a demand letter seeking recovery of costs, AMG refused to make any payment. Id. ¶¶ 37, 44-46. Additionally, Plaintiff alleges reduced capacity and loss of revenue due to the transfer of soil to the Miramar landfill. *Id*. ¶ 48.

In support of its claim for breach of oral contract and promissory estoppel against MPG Defendants, Plaintiff alleges it reached an agreement with MPG Defendants that Plaintiff would accept clean native soil or Waiver-10 soil at its Chollas landfill without charging permit processing fees. *Id*. ¶¶ 51, 52. Plaintiff further alleges MPG Defendants had Defendant AMG handle the delivery of the soil to the Chollas landfill. *Id*. ¶ 54. According to the allegations of the complaint, MPG Defendants breached the agreement by failing to take corrective measures when the Regional Board issued a Notice of Violation after Defendant AMG delivered soil that did not meet the requirements of the agreement and by failing to reimburse Plaintiff for expenses incurred as a result of correcting the violation and reduced capacity at the Miramar landfill. *Id*. ¶ 56.

Plaintiff's injury, having to develop and implement a CAP as a result of Defendant AMG's conduct of depositing soil that did meet the native clean soil or Waiver-10 soil requirement of the ROE did not occur on the federal enclave. The failure to comply with the ROE occurred when AMG deposited improper soil at the Chollas landfill which is not a federal enclave. Defendants' failure to indemnify Plaintiff similarly occurred outside the asserted federal enclave. Defendants appear to rely on the origin of the soil and that they

initially attempted to deposit the soil at the Miramar landfill. The origin of the soil is not relevant to Plaintiff's purported injury. And, according to Plaintiff's allegations, Defendants' attempt to deposit the soil at Miramar landfill preceded and triggered the parties to engage in discussion to come to the agreement under which Plaintiff seeks relief.

Similarly, the conduct giving rise to Plaintiff's breach of contract and indemnity claims against MPG Defendants occurred as a result of the MPG Defendants' failure to act when notified of the Notice of Violation and failure to reimburse Plaintiff for corrective action. Accordingly, the majority of the pertinent events giving rise to Plaintiff's injury occurred outside the federal enclave. *See Jamil v. Workforce Res., LLC*, 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018) (Finding federal jurisdiction proper because the "majority of the pertinent events took place on a federal enclave."). The locus of the claim is not the federal enclave and, therefore, federal enclave jurisdiction does not exist.

## II. Federal Officer

Pursuant to Section 1442(a)(1), an action filed in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such officer" may be removed to district court. A private party asserting federal officer jurisdiction must demonstrate "(a) it is a 'person' within the meaning of the statute, (b) a causal nexus exists between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable; federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)). Removal under section 1442, unlike removal under section 1441, is interpreted broadly in favor of removal. *Id*. at 1252. However, the defendant still "bears the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction are factually supported." *Lake v. Ohana Mil. Communities, LLC*, 14 F.4th 993, 1000 (9th Cir. 2021) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)).

MPG Defendants argue removal is proper under section 1442(a)(1) because they were acting under the direction of federal officers, during all times relevant to the action, they can assert colorable federal defenses, and there is a causal nexus between Plaintiff's claims and Defendants' acts performed under color of federal office.

**A. Causal Nexus**

Defendants contend they were working under the direction of the Navy, the project site owner, to carry out the Navy's responsibilities when they attempted to dispose of the soil generated by the Broadway Complex Project site at the Miramar landfill under the terms of the Miramar Ground Lease. They further argue because they were acting under the direction of the Navy when Plaintiff refused to honor the lease agreement, the causal nexus requirement is satisfied.

Plaintiff argues, in reply, MPG Defendants do not submit any evidence of its alleged agency with the Navy and identifies no Navy representative who purportedly gave instructions they followed. Plaintiff contends there is no evidence that the Navy directed MPG Defendants on how or where to dispose of the waste materials relevant to this case and no evidence to support that the violation of the permit that allowed the disposal of clean soil at the Chollas Landfill site was done at the direction of the Navy. Plaintiff further contends MPG never indicated it was acting on behalf of the Navy when Plaintiff made attempts to get MPG Defendants to remediate the issue caused by the improper disposal of soil. Additionally, Plaintiff argues the lease agreement between the Navy and MPG ("Broadway Complex Lease") demonstrates MPG Defendants were solely responsible for the disposal of waste generated from the Broadway Complex Project site and no agency, partnership or other similar relationship existed between MPG Defendants and the Navy.

In their sur-reply, Defendants argue the Broadway Complex Lease contradicts Plaintiff's argument. Specifically, they argue the lease directs Defendants to complete demolition and construction within the parameters outlined by the Navy and continue adequate waste disposal in furtherance of any construction.

A private entity is "acting under" a federal officer if they are acting as an officer's agent. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151 (2007); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego,* 865 F.3d 1237, 1246-47 (9th Cir. 2017). A private entity is also "acting under" a federal officer if they are "acting under the 'subjection, guidance or control' of the officer" or the relationship with the federal officer is unusually close, "'involving detailed regulation, monitoring, or supervision.'" *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756 (9th Cir. 2022) (quoting *Watson*, 551 U.S. at 151, 153). Additionally, private entities who assist in carrying out the federal officer's governmental tasks are "acting under" a federal officer. *Watson*, 551 U.S. at 153. Defendants must demonstrate a causal connection between their conduct giving rise to this action and those taken pursuant to the federal officer's authority. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

As discussed above, Defendants' alleged conduct giving rise to this action consisted of depositing soil that did meet the native clean soil or Waiver-10 soil requirement of the ROE, failure to indemnify Plaintiff, failure to act when notified of the Notice of Violation and failure to reimburse Plaintiff for corrective action. Defendants contend they were acting under the instruction of the Navy to dispose of soil generated by the Broadway Complex Project at the Miramar Landfill under the terms of the Miramar Ground Lease. The Miramar Ground Lease is an agreement between the City of San Diego and the United States Navy addressing the lease of land parcels located on the Naval Air Station, Miramar for use as a landfill. *See* Miramar Ground Lease, Exh. 4, Amin Decl. (ECF No. 1-2). The lease does not mention the Broadway Complex Project or Defendants. However, the Navy reserves the right to dispose of waste from Navy facilities located within the City of San Diego in the landfill under the terms of the lease. The Broadway Complex Lease, under which Defendants completed their work at the Broadway Complex Project, does not include any instruction to dispose of waste generated by the project at the Miramar Landfill. Pursuant to the Broadway Complex Lease, Defendants, as the lessee are, "at its sole cost and expense,. . .responsible for disposing,. . .in accordance with all applicable

Environmental Laws, all waste generated by the Lessee on the Premises." Broadway Complex Lease § 11.5  (ECF No. 20-2).  It further specifies that Defendants are not permitted to commingle its solid waste with Government waste. *Id*.  In addition, the lease instructs Defendants to obtain all necessary "Environmental Permits at their sole cost and expense, whether or not there are any existing Environmental Permits issued to the Government." *Id*. § 11.2.

MPG Defendants contend the lease demonstrates they were "acting under" the Navy's instruction.  However, the provisions they reference, while comprehensive, do little more than instruct Defendants to comply with all applicable laws addressing waste disposal and storage including obtaining the necessary permits at their own expense. *See Id*. §§ 11.2-11.24.  It is insufficient to demonstrate the guidance and control required to show they were acting under the direction of the Navy when they deposited the soil at the Chollas landfill. *Goncalves*, 865 F.3d at 1245.  Furthermore, the section titled "Relationship of Parties: Assignment of Claims," identifies the relationship as a "landlord/tenant relationship" and specifies no "master/servant, agency, partnership, joint venture" relationship is created by the lease.  Broadway Complex Lease § 33.6 (ECF No. 20-2).

The leases upon which Defendants rely do not demonstrate MPG Defendants were acting as agents of the Navy, fulfilling government tasks necessary or working under the close control or guidance of the Navy.  Accordingly, Defendants fail to show they were "acting under" a federal officer and, therefore, fail to establish a causal nexus.

### B. Colorable Federal Defenses

Because MPG Defendants fail to establish a causal nexus, the Court will not address whether they have a colorable federal defense.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds Defendants fail to demonstrate the Court has subject matter jurisdiction over this action.  Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's motion to remand (ECF No. 10) is GRANTED.

2. Defendants' motion to dismiss and motion to strike (ECF Nos. 6, 7) are DENIED as moot.

3. This action is REMANDED to Superior Court of California, County of San Diego for all further proceedings.

DATED: March 24, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE